FILED
SUPERIOR COURT
OF GUAM

2019 NOV 26 PM 2: 12

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>BRANDON JOHN SAN NICOLAS,<br><br>           Defendant. | CRIMINAL CASE NO. CF0211-16<br><br>DECISION AND ORDER |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on June 22, 2017 and August 1, 2019, for hearing on Defendant Brandon John San Nicolas's ("Defendant") Motion to Suppress. Defendant was present with counsel, Public Defender Stephen P. Hattori, and Assistant Attorney General James C. Collins and Assistant Attorney General Matthew Phelps appeared on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On April 7, 2016, Defendant was indicted with the following charges: (1) Possession of a Firearm without a Firearms Identification Card (As a Third Degree Felony); (2) Possession of an Unregistered Firearm (As a Third Degree Felony); and (3) Possession of a Schedule I Controlled Substance (As a Violation). (Indictment, Apr. 7, 2016). On May 5, 2017, Defendant filed the instant Motion to Suppress. On May 16, 2017, the Government filed its Opposition. No Reply was filed.

On June 22, 2017, the Court heard sworn testimony from Guam Police Department ("GPD") Officer Benny T. Babauta. The matter was then continued to July 11, 2017, so that Defendant's witnesses could be present to testify. On July 11, 2017, Defendant sought to call Rico Mantanona ("Mantanona") to the stand, however, due to the witness's own unrelated criminal matter, the hearing was continued numerous times until Mantanona's criminal case was adjudicated.

On August 1, 2019, the Court heard sworn testimony from Nicolas Brown ("Brown") and Defendant. No testimony was provided by Mantanona. The Court then gave the parties leave to file proposed findings of fact and conclusions of law based on the testimony that came forward.

On August 5, 2019, the Government filed its Proposed Findings of Fact and Conclusions of Law, and on August 22, 2019, Defendant filed his proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

## DISCUSSION

Defendant moves the Court to suppress evidence because GPD improperly seized Defendant without probable cause for an arrest and performed an unreasonable warrantless search. *See generally*, Mot. Suppress, May 5, 2017. The Government opposes, arguing that Defendant was not "detained" under the Fourth Amendment upon the initial encounter with GPD and that there was a valid basis to subsequently detain and arrest Defendant. *See generally*, Opp'n, May 16, 2016.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." *Id.* (quotation marks and citation omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4

(citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "The reasonable suspicion necessary to justify an investigatory stop is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* at ¶ 5 (citation and internal quotation marks omitted).

At the Suppression Hearings, the witnesses testified to the following:

**Officer Babauta's Testimony**

On or about March 29, 2016 at 2:00 a.m., Officer Babauta was in a marked patrol vehicle making checks of business establishments when he passed by the parking lot of Days Inn in Tamuning. Officer Babauta observed three individuals in a poorly lit area of the corner of the parking lot, and wanted to make sure that they were okay. Officer Babauta did not activate his lights or siren before approaching. Officer Babauta testified that he did not park behind anyone and was not blocking anyone from leaving.

The first individual Officer Babauta spoke to was located slightly away from the other two. The individual did not have identification on him, but told Officer Babauta his name and indicated he was just released from the hospital and showed Officer Babauta his hospital identification tag on his wrist. Officer Babauta testified that while he was interacting with this first individual, the other two individuals were standing near a parked jeep. Officer Babauta then proceeded to meet the other two individuals, later identified as Defendant and Mantanona.

Officer Babauta testified that as he approached, Defendant and Mantanona appeared nervous and uneasy, and he came upon the distinct odor of marijuana in the air. Officer Babauta testified that the odor was around the open door of the jeep where Defendant and Mantanona were standing. Officer Babauta started to pan his flashlight around the door area and found Defendant's reaction to his actions concerning. Officer Babauta testified that Defendant began coming towards him and started pleading, asking what they did wrong. Officer Babauta described his actions as "panicky" and "anxious." Officer Babauta testified that he then became concerned for his safety and explained to Defendant what he smelled in the air. Officer Babauta testified that he also observed signs of a marijuana user: red eyes, slanted eyes, laid back demeanor.

*People v. San Nicolas*
Case No. CF0211-16
Decision and Order

Officer Babauta then asked Defendant if he had a joint and that they could work something out. Defendant, after slight hesitation, admitted he had a marijuana joint inside the vehicle. Officer Babauta testified that Defendant then gave him permission to get the marijuana joint in the jeep. Officer Babauta asked if there was anything else in the car, to which Defendant responded a firearm in the glove box. Officer Babauta asked Defendant if he had a firearms identification card, to which he said no. Officer San Nicolas arrived to assist, and retrieved the firearm and a magazine from the vehicle. *See* Ex. 2 (Evidence Custody Receipt). Officer Babauta acknowledged that he did not demand to see Defendant's identification card immediately upon entering the parking lot, unlike when he encountered the first individual.

**Mr. Nicholas Brown's Testimony**

Brown testified that he called Defendant to ask him to pick him up some food for his "lunch" and indicated he would pay for gas in return. Brown indicated his shift at Days Inn was usually from 6:00 p.m. to 3:00 a.m. Brown testified that he and Defendant grew up in the same neighborhood and have known each other since high school. Defendant helped him get the job at Days Inn and understood the nighttime duties. Prior to getting the job at Days Inn, Brown was unemployed for six years. Brown testified that Defendant brought him food as requested, and that Mantanona, Brown's cousin, also came to see if he still needed food. Brown also testified that he rarely calls or speaks to Defendant.

On the night of the search, Brown observed a police car speeding into the parking lot. According to Brown, Officer Babauta blocked the middle part of the parking lot so that no one could leave. Brown was standing inside the hotel at the front door to see what was going on. Brown testified that the officer who first arrived was yelling and intimidating, and that the situation was upsetting and he was worried about his job. Brown testified that he could hear what was going on because in the parking garage, everything echoed. Brown testified that Defendant did not mention anything about a marijuana joint or a gun in the car, and that Defendant never consented to a search of the vehicle. Brown testified that Officer Babauta didn't ask to search the vehicle and that he just said he was going to do so and for Defendant to move out of the way.

Brown testified that he walked out of the hotel when the second officer arrived at the scene. Brown told the officers he needed to leave the premises to speak to his manager at Windham Gardens. Brown testified that the officer had to move his patrol vehicle for him to be able to back out his car to leave.

Brown testified that he did not smell any marijuana or observe anyone smoking any marijuana when he went outside to get his food earlier. Brown testified that Defendant and Mantanona were only smoking a cigarette. Brown admitted that he had never smelled burnt marijuana before, but stated he knew what unburnt marijuana smelled like because of a description provided in a class he attended.

**Defendant's Testimony**

Defendant testified that he was at the Days Inn to bring food to Brown. Defendant testified that Officer Babauta blocked his vehicle in by parking his patrol car right behind the jeep. Defendant testified that he asked to leave numerous times but was never granted permission. Defendant stated that he did not feel free to leave.

Defendant testified that he did not say anything to Officer Babauta about a marijuana joint or a gun being in his glove compartment. Defendant further testified Officer Babauta did not ask him if he could search his vehicle, and that he did not give consent for Officer Babauta to search the vehicle.

Defendant testified he was not handcuffed at the Days Inn and that he drove his own vehicle to the precinct. Defendant testified that he was told if he followed the officers down to the police station and filled out forms, he would be allowed to go home. Defendant testified that the officers kept pressing him about drugs, asking "where is the ice?"

At the precinct, Defendant signed a consent form to search the vehicle for firearms and drugs after the search was conducted, time stamped 3:10 a.m. *See* Ex. 1 (Consent Form). Defendant testified that he did not fill out the consent form, and that he was told to sign the form. At the time the form was signed, Defendant's vehicle was already searched. Defendant estimated the search occurred maybe forty-five minutes to an hour prior. Defendant testified he signed the consent form because he was tired, scared, and the officer told him that he could go

home if he signed it. Defendant, however, refused to waive his rights at the precinct. *See* Ex. A (Custodial Interrogation Form).

Defendant acknowledged that he knew the firearm was in the vehicle, that he did not have a valid firearms ID card at the time, and that the firearm was not registered. Defendant testified that he had previously had a firearms ID card and was familiar with the process. Defendant also acknowledged that he could have walked away even if his vehicle was blocked, but that walking away would make him look guilty. Defendant testified that he saw Officer Babauta briefly speak with another individual before approaching him and Mantanona.

## I. Whether Defendant was improperly "detained" under the Fourth Amendment

The first issue before the Court is whether Defendant was improperly detained by Officer Babauta. It is clear that not every encounter between the police and citizens amounts to a seizure under the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 434 (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). When examining whether an encounter between a police and a citizen constitutes a seizure under the Fourth Amendment, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a *reasonable person* that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439 (emphasis added). *See also People v. Cundiff*, 2006 Guam 12 ¶ 21. The reasonable person test presupposes an *innocent* person. *Bostick*, 501 U.S. at 438 (emphasis added). In "conducting this analysis, examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Barry*, 394 F.3d 1070, 1076 (8th Cir. 2003). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry*, 392 U.S.1, 19, n.16 (1968). *See also Chargualaf*, 2001 Guam 1

¶ 21 ("A person is deemed to be seized for the purposes of the Fourth Amendment if a police officer has, by means of physical force or show of authority, restrained the person's freedom to walk away.").

The Court does not find that Defendant was detained under the Fourth Amendment upon his initial encounter with Officer Babauta. Defendant argues that he was detained because "the officer blocked Mr. San Nicolas' car and just walked up and started demanding identification without viewing any evidence of a crime. The Defendant was not free to leave." (Def. Proposed FFCL at 3, Aug. 22, 2019). Conflicting testimony was provided at the Suppression Hearings regarding the parked location of Officer Babauta's patrol car. On the one hand, Officer Babauta testified that he did not park behind Defendant and was not blocking anyone from leaving. On the other hand, Defendant and Brown testified that Officer Babauta blocked the jeep from leaving by parking right behind it. Officer Babauta and Defendant, however, both testified that Officer Babauta spoke to a third individual who was located further away before approaching Defendant and Mantanona. Brown did not notice a third individual from his view from the front door, where he could see Defendant and Mantanona. It's not clear to the Court why Officer Babauta would park behind Defendant's jeep, but then walk away from Defendant and Mantanona to approach another individual first.

Additionally, although Defendant testified that he asked to leave numerous times and was ignored, he did acknowledge that he could have walked away but did not want to because it would make him look guilty. Defendant further acknowledged that he knew that the firearm was in his vehicle and that he did not have a valid firearms identification card or firearms registration. "[W]hether the police conduct would have communicated to a *reasonable person* that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439 (emphasis added). The reasonable person test presupposes an *innocent* person. *Id.* at 438 (emphasis added). "If the person would feel free to leave, then the continued presence of the person is not a seizure; rather, it is a consensual encounter with the police that does not implicate the Fourth Amendment." *Chargualaf*, 2001 Guam 1 ¶ 22. Officer Babauta's check and questioning of Defendant at this time would not on its own

constitute a seizure. No testimony came forward that Officer Babauta had his weapon drawn during this encounter.

The Court finds, however, that upon Officer Babauta's search of the vehicle and identifying the firearm and marijuana, Defendant was detained. At this time, Officer Babauta called for a second officer to come to the scene, and had a valid basis to detain and arrest Defendant as he was in possession of a firearm without a valid firearms identification card or firearms registration.

**II. Whether Officer Babauta performed an unreasonable warrantless search of Defendant's vehicle**

Defendant argues that "[t]here was no reason to suspect Defendant of criminal activity while he was on private property." (Def. Proposed FFCL at 6). "Probable cause for a vehicle search exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Johnson*, 445 F. App'x 311, 313 (11th Cir. 2011) (quotation marks and citation omitted). "[I]f a police officer detects the odor of marijuana, this gives rise to probable cause supporting a warrantless search." *Id.* (citations omitted).

Here, Officer Babauta testified that he was familiar with the odor of marijuana and that he smelled marijuana around the jeep and observed the characteristics of someone who has recently smoked marijuana. Such observation would provide a basis for detention under the belief that Defendant or Mantanona may be in possession of marijuana. Further, Defendant disclosed that he had a firearm in the vehicle but did not have a valid firearms identification card. Although Defendant and Brown contest whether any admission was made to the existence of marijuana or a weapon in the vehicle, the Court finds that a number of factors indicate Defendant did disclose to Officer Babauta that there was marijuana and a firearm in the vehicle, and that voluntary consent was given to search the vehicle, as testified to by Officer Babauta. Brown admitted that he is beholden to Defendant because Defendant helped him get the job at Days Inn, and that prior to getting the job he was unemployed for six years. Additionally, although Brown testified that he and Defendant rarely talk to each other, they were still in

sufficient contact for Defendant to help him get the job in 2016 and for Brown to be comfortable enough to ask Defendant to get him food in the middle of the night. Further, while Brown and Defendant indicated it was a contentious exchange with GPD, Defendant later voluntarily signed a GPD consent form. Defendant testified that he was told to sign the consent form and that he would be able to go home as a result, but acknowledged that maybe he should not have signed it if he didn't agree with it. Although Defendant states he was compelled to sign the consent form, he did not agree to waive his rights and refused to sign the waiver form, which indicates to the Court that he was not necessarily coerced into doing something he could have refused to do. The Court finds that based on the evidence presented, Defendant sought for the interaction to end as quickly as possible, which resulted in his disclosure of the marijuana and firearm. Although Defendant may have been under the impression that if he cooperated similarly to the third individual who first encountered Officer Babauta, then he would be released and it would be all over, he admitted to having an illegal firearm in his vehicle, which made his situation different from the third individual who had a brief encounter with Officer Babauta. Accordingly, the Court does not find that Defendant's Fourth Amendment rights were violated, and will not suppress any evidence seized from Defendant's vehicle.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. Further Proceedings are set for **January 14, 2020** at **9:00 a.m.**

IT IS SO ORDERED this 26th day of November, 2019.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of: AG & PDSC

Date: 11/26/19  Time: 3:30 pm

Deputy Clerk, Superior Court of Guam

*People v. San Nicolas*
Case No. CF0211-16
Decision and Order